Nisha Wright (SBN: 202564)
**The Wright Law Office, P.A.**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 393-3677
nisha@wrightlawoffice.com

Manfred P. Muecke (SBN: 222893)
**MANFRED, APC**
4225 Executive Square
Suite 600-6051
La Jolla, CA 92101-3370
Telephone: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

Eric A. Grover (SBN: 136080)
eric.grover@kellergrover.com
Rachael G. Jung (SBN: 239323)
rachael.jung@kellergrover.com
**Keller Grover LLP**
1965 Market Street
San Francisco, CA 94103
Telephone: (415) 543-1305

Scot Bernstein (SBN: 94915)
**Law Offices of Scot D. Bernstein**
**A Professional Corporation**
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Telephone: (916) 447-0100
swampadero@sbernsteinlaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEX MERRICK and MILDRED SEVY, on Behalf of Themselves and All Others Similarly Situated,<br>Plaintiffs,<br><br>vs.<br><br>MARS FOOD US, LLC and MARS, INC.<br><br>Defendants. | Case No.: 3:26-cv-04610-JLS-JAC<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Alex Merrick and Mildred Sevy (collectively, "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendants Mars Food US, LLC and Mars, Inc. (collectively, "Defendants" or "Mars"). Except as to allegations pertaining to Plaintiffs individually, which are based on their personal knowledge, Plaintiffs make the following allegations, which are likely to have evidentiary support after further investigation and discovery, based on the investigation by counsel and upon information and belief.

## INTRODUCTION

1. This class action lawsuit arises out of Defendants' use of deceptive labeling, marketing, and advertising techniques. These techniques were and are used to mislead consumers regarding the ingredients and nutritional value of Defendants' "Organic Quinoa, Brown & Red Rice with Flaxseed" product sold under the "Seeds of Change" brand (the "Product"). Defendants' deceptive techniques include prominently displaying quinoa first in the Product's name on the front of the package, thereby falsely and misleadingly conveying that quinoa is one of the main ingredients that make up the Product.

2. Over the past several decades, quinoa has become increasingly popular as a health food in the United States. Quinoa is naturally gluten-free and is often marketed as a "superfood" because of its nutritional benefits, including its

high protein and fiber content, essential amino acids, and antioxidant and anti-inflammatory plant compounds.

3. Quinoa may also offer other health benefits, such as boosting digestive health, helping to control hunger, and lowering the risk of diabetes and colon cancer. Because of its many reported benefits, consumers seek out products made with or containing quinoa and are willing to pay a price premium for them.

4. Defendants have created, marketed, and advertised the Product in a manner that deceives reasonable consumers, like Plaintiffs, into believing that the Product contains a substantial or meaningful amount of quinoa. Defendants prominently label and identify the Product on the front of the packaging as "QUINOA, BROWN & RED RICE WITH FLAXSEED," with quinoa appearing first in large typeface on the front of the package. By identifying quinoa as the first of three grains that make up the Product, Defendants convey to reasonable consumers that quinoa is a substantial or meaningful component of the Product.

5. Contrary to the impression created by the Product's name and packaging, quinoa comprises a negligible of the Product – *less than 2%*. Although quinoa is prominently identified as one of the three main grains on the front of the packaging, the ingredient list reveals that quinoa is present only in a minor amount. Flaxseed is also separately identified on the front label as an additional ingredient, but as it turns out, brown rice and red rice are the predominant ingredients in the Product.

6. Defendants' representations on the Product label are false and misleading. Reasonable consumers would not expect a Product prominently identified as "QUINOA, BROWN & RED RICE WITH FLAXSEED" to contain less than 2% quinoa. The Product's name creates the misleading impression that quinoa is a substantial component of the grain blend when, in fact, it is present only in a negligible amount.

7. Defendants' false and misleading representations caused and continue to cause consumers economic harm because Plaintiffs and the members of the proposed Class paid a price premium for the Product over comparable products based on Defendants' misrepresentations concerning the composition, ingredients, and nutritional value of the Product. Plaintiffs and putative Class members purchased the Product in reliance on Defendants' representations concerning its ingredients and composition. They would not have purchased the Product, or would have paid less for it, had they known the true amount of quinoa it contained.

8. Defendants' misrepresentations concerning the Product are unfair, unlawful, and fraudulent, and are likely to deceive reasonable consumers. Plaintiffs bring this action on behalf of themselves and Classes of consumers in California and other states with materially similar consumer protection laws to recover damages and to enjoin Defendants' unlawful conduct.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5 million, exclusive of interest and costs; it is a class action of over 100 members; and at least one Plaintiff is a citizen of a state different from at least one Defendant. Plaintiffs allege that the total claims of individual members of the proposed Classes (as defined herein) exceed $5 million in the aggregate, exclusive of interest and costs.

10. This Court has personal jurisdiction over Defendants. Defendants continuously and systematically conduct business in the State of California, including this judicial district, and have purposefully availed themselves, and continue to avail themselves, of the jurisdiction of California through the privilege of conducting their business ventures in this state, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Plaintiffs' rights were also violated in the State of California and arose out of their contacts with Defendants and purchases of Defendants' Product from within California.

11. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, as Defendants do business throughout this district. Plaintiffs purchased the Product in this district.

## THE PARTIES

12. Plaintiff Merrick is a citizen of California and resides in San Diego County, California. During the relevant period, Ms. Merrick purchased the Product for personal use from a Target store located in San Diego County, California. When she purchased the Product, Ms. Merrick read and relied on the statements on the front of the packaging, including the word "quinoa" prominently displayed first in the Product's name. Ms. Merrick would not have purchased the Product at the price she paid, or at all, had she known that quinoa was not a substantial ingredient or one of the main ingredients in the Product.

13. Plaintiff Sevy is a citizen of California and resides in Santee, California, in San Diego County. During the relevant period, Ms. Sevy purchased the Product for personal use from retail stores in San Diego County, California, including purchases in December 2024, December 2025, and January 2026. When she purchased the Product, Ms. Sevy read and relied on the statements on the front of the packaging, including the word "quinoa" prominently displayed in the Product's name. Ms. Sevy would not have purchased the Product at the price she paid, or at all, had she known that quinoa was not a substantial ingredient or one of the main ingredients in the Product.

14. Defendant Mars, Inc. is a Delaware corporation with its principal place of business in McLean, Virginia. Mars, Inc. is a multinational manufacturer and marketer of food, confectionery, and pet care products. Its food brands include Ben's

Original™, SEEDS OF CHANGE®, Tasty Bite®, and other nationally distributed products. Mars, Inc. markets and distributes its products throughout California and the United States.

15. Defendant Mars Food US, LLC ("Mars Food") is a Delaware limited liability company with its headquarters in Chicago, Illinois, and is a subsidiary of Mars, Inc. Mars Food labels, markets, and distributes its products throughout California and the United States. Key brands for Mars Food include Ben's Original™, SEEDS OF CHANGE®, Kevin's Natural Foods, and DOLMIO®.

16. Seeds of Change was founded in 1989 as a seed company specializing in organic agriculture. Mars, Inc. acquired the company in 1995. Seeds of Change currently operates under the Mars Food & Nutrition division, which is headquartered in Chicago, Illinois. In addition to offering a variety of garden seeds for planting, Seeds of Change launched its food products in the United States in 1997, when it began offering protein bowls and ready-made meals of rice and grain.

17. In 2009, Seeds of Change was among the first companies to make organic quinoa commercially available in the United States. The Product at issue in this case was first introduced in 2015.[1]

---

[1] Our Story; September 13, 2022 (available at https://www.seedsofchange.com/articles-and-videos/our-story) (last visited Oct. 1, 2026).

18. Defendants are the owners, controllers, and brand managers of the Seeds of Change brand. They are engaged in the business of formulating, marketing, advertising, distributing, and selling Seeds of Change products throughout California and the United States.

## FACTUAL ALLEGATIONS

### A. Quinoa's Nutritional Benefits and Economic Value

19. Quinoa is a nutritious seed that provides a complete source of plant-based protein as well as key vitamins and minerals, including thiamin (vitamin B1), riboflavin (vitamin B2), vitamin B6, folate, iron, magnesium, phosphorus, and manganese.[2] It is regarded as having multiple health benefits, which include being high-protein, high-fiber, and containing necessary vitamins that are essential to overall good health. Quinoa is also a complete protein and contains all nine essential amino acids, making it a great option for vegetarians and vegans.[3] It contains almost twice as much protein as brown rice.[4]

---

[2] Cleveland Clinic, *The Health Benefits of Quinoa* https://health.clevelandclinic.org/quinoa-benefits (Last accessed on October 26, 2026).

[3] Kubala, J. and Gunnars, K., *8 Evidence-Based Health Benefits of Quinoa*, Healthline (updated Jun. 27, 2024) (available at: https://www.healthline.com/nutrition/8-health-benefits-quinoa) (last visited Oct. 30, 2026).

[4] https://ufhealth.org/care-sheets/healthy-food-trends-quinoa

20. In addition to being a healthier alternative to white rice and white pasta, quinoa is naturally gluten-free. It serves as a safe and healthy grain alternative for people with celiac disease or gluten sensitivity.[5]

21. The many nutrients in quinoa can provide key health benefits, such as boosting digestive health, lowering the risk of colon cancer, helping to control hunger, controlling or lowering the risk of diabetes, managing blood pressure, lowering cholesterol, and benefiting overall cardiometabolic health. Various studies also suggest that eating quinoa and quinoa-based products may benefit blood sugar regulation, body weight, and triglyceride levels.[6]

22. Because of the many perceived health benefits of quinoa, which is often labeled and marketed as a "superfood" or "golden cereal," quinoa often costs significantly more per pound than other grains. For example, quinoa can cost $3.44 to $5.99 per pound, as compared to $1.30 to $3.50 per pound for long grain brown rice. At its extreme of $5.99 per pound versus $1.30 per pound, this reflects a 4.6-fold price difference.[7]

---

[5] *See* fn. 3, *supra*.

[6] *Id*.

[7] *See, e.g*. prices listed as of October 1, 2026 on walmart.com listing Great Value Natural Bown Long Grain Rice (32 oz.) for $1.72 (5.4¢ per oz. / $0.86 per lb.) (https://www.walmart.com/ip/Great-Value-Natural-Brown-Long-Grain-Rice-32-oz/10898755) as compared to Great Value Organic White Quinoa (16 oz.) for $3.61 (22.6¢ per oz. / $3.61 per lb.) (https://www.walmart.com/ip/Great-Value-Organic-White-Quinoa-16-oz-Pieces-of-Quinoa/51258803) (last visited October 1, 2026).

23. Market data suggests that consumers are highly susceptible to this pricing structure because of (1) the reputed nutritional density of quinoa, and (2) the "healthy label" effect, under which consumers are willing to pay a price premium if a product features a "healthy" icon or emphasizes an ancient grain such as quinoa.[8]

24. Defendants used this well-known information regarding the higher cost and nutritional benefits of quinoa to induce Plaintiffs and Class members to pay more for Defendants' products, whether or not those products contained a meaningful amount of quinoa.

**B. The Product and Defendants' Misrepresentations**

25. Defendants manufacture, distribute, advertise, market, and sell the Product throughout California and the United States. At all relevant times, Defendants have marketed the Product consistently and uniformly relating to its ingredients and nutritional benefits. Defendants sell the Product through retail grocers, online stores, and various other distributors.

26. The Product is marketed as a convenient, ready-to-heat blend of grains. Defendants prominently identify the Product on the front display panel of

[8] *See* Vara, V., *Why We're Willing To Pay More For Cereals With Ancient Grains*, The New Yorker (Oct. 24, 2014) (available at: https://www.newyorker.com/business/currency/well-pay-ancient-grains-cheerios) (last visited Oct. 30, 2026). *See also* Cornell Chronicle, *'Organic' food labels create perception of healthier fare* (Apr. 26, 2011) (available at: https://news.cornell.edu/stories/2011/04/organic-food-label-imparts-health-halo-study-finds) (last visited Oct. 30, 2026).

its packaging as **"QUINOA, BROWN & RED RICE** WITH FLAXSEED." The Product's name and label identify quinoa, brown rice, and red rice as the three main grains of the Product. A representative picture of the front of the label from Defendants' website is as follows:[9]




27. As can be seen from the image, the word "quinoa" is prominently displayed *first* in the Product name, with brown and red rice following *after* quinoa in the Product title. With quinoa appearing first, reasonable consumers would expect that the Product is primarily made of and/or contains a substantial amount of quinoa, not merely a negligible amount. The wording and structure of the

[9] Seeds of Change: Organic Quinoa, Brown & Red Rice with Flaxseed, https://www.seedsofchange.com/products/rice-grains/seeds-change-certified-organic-quinoa-brown-red-rice-flaxseed-85-oz-pouch (Last accessed October 26, 2026).

Product's name convey to reasonable consumers that quinoa is one of the principal grains comprising the Product and is present in a substantial or meaningful quantity. The name does not identify quinoa as an incidental ingredient, as it does "with flaxseed."

28. By prominently identifying quinoa as one of the three main ingredients, Defendants create the impression that consumers are purchasing a grain blend containing a meaningful amount of quinoa, together with brown rice and red rice, rather than a product consisting predominantly of rice with only a negligible amount of quinoa added.

**C. The Product Contains Less than 2% Quinoa**

29. Contrary to the impression created by the Product's name and front packaging, quinoa is not one of the Product's predominant grain ingredients. Instead, the Product consists primarily of water, whole grain brown rice, and red rice. Quinoa comprises a negligible amount of the Product's ingredients.

30. The ingredients list in fine print on the back of the package identifies quinoa as the fourth ingredient and states that it comprises "less than 2%" of the overall Product, along with brown flax seeds, sunflower oil, and salt. A representative picture of the back of the Product packaging, with the ingredients list magnified, is below:







31. Significantly, flaxseed also appears among the ingredients comprising less than 2% of the Product. Yet, Defendants distinguish quinoa from flaxseed on the front of the packaging by presenting quinoa as one of the three main grains and flaxseed as an additional ingredient through the phrase "WITH FLAXSEED."

32. The distinction is material. Reasonable consumers understand the Product's name to identify quinoa, brown rice, and red rice as the grains that characterize the Product, with flaxseed added as a minor ingredient.

33. The Product's labeling and packaging are clearly designed and intended to make consumers believe that there is a substantial or significant amount of quinoa in the Product that would yield the health and nutritional benefits that consumers seek from quinoa products and would justify a premium price. In reality, there is a

negligible amount of "whole grain black quinoa" in the Product. Defendants use false and misleading claims about a premium, expensive ingredient as a marketing hook while filling the bag with cheaper grains.

34. The ingredient statement does not eliminate the misleading impression created by the front label. Rather, it reveals that the Product's actual composition differs materially from the composition reasonably communicated by its name. Reasonable consumers should not be required to examine the fine-print ingredient statement on the back to discover that a grain prominently identified as a principal component of the Product is present only in a minor amount.

35. Plaintiffs and Class members were misled by Defendants' uniform misrepresentations on the front of the package, including the prominent display of "quinoa" first in the Product's name, each and all of which created the reasonable impression that the Product is primarily made of and/or contains a meaningful amount of quinoa, when in reality it does not. Plaintiffs and Class members would not have purchased the Product, or would have paid less for it, had they known that quinoa comprised less than 2% of the Product.

**E. Other Seeds of Change Products with Quinoa**

36. The reasonableness of consumers' belief in Defendants' misrepresentations is supported by Defendants' other Seeds of Change products that contain quinoa.

37. For example, the "Seeds of Change Organic Quinoa & Brown Rice with Garlic" product also prominently displays "quinoa" first in the product name. The ingredients list, however, is consistent with the front label and identifies quinoa as one of the main ingredients in the product, as follows: water, whole grain brown rice, *blend of whole grain quinoa (whole grain red and black quinoa)*, less than 2% sunflower oil, sea salt, garlic powder, onion powder, minced garlic, parsley, and black pepper. Representative pictures of the front and back of the packaging are below:







38. Similarly, the "Seeds of Change Organic Quinoa & Brown Rice with Garlic & Lentils" product lists quinoa as a main ingredient in the ingredient list, before the designation for ingredients comprising less than 2% of the product, as

follows: water, whole grain brown rice, lentils, *black quinoa, red quinoa*, and less than 2% of extra virgin olive oil, sea salt, garlic powder, onion powder, minced garlic, parsley, black pepper, sunflower oil. Representative pictures of the front and back of the packaging are below:







39. The "Seeds of Change Organic Quinoa & Brown Rice with Sea Salt" product similarly identifies quinoa in its name and lists quinoa before the designation for ingredients comprising less than 2% of the product. The ingredients for this product are listed as: water, long grain brown rice, *whole grain quinoa blend (red and black quinoa)*, with less than 2% sunflower oil and sea salt. Representative pictures of the front and back of the packaging are below:







40. In each of the three products mentioned above, Defendants prominently identify quinoa as one of the principal grains, and the ingredient statements list quinoa ***as a main ingredient***, before the designation for ingredients comprising less than 2% of the product. In contrast, the Product challenged here prominently identifies quinoa as the first of three principal grains, while noting in the fine print ingredient list that quinoa, in fact, comprises less than 2% of the Product.

41. Defendants' competitors follow these same marketing strategies and further confirm the reasonableness of consumer's belief and reliance on Defendants' Product label misrepresentations. For instance, Target sells a comparable product under its "Good & Gather" brand identified as "90 Second Brown Rice, Quinoa & Red Rice with Flaxseeds." [10]

[10] *See* https://www.target.com/p/90-second-brown-rice-quinoa-38-red-rice-with-flaxseeds-microwavable-pouch-8-5oz-good-38-gather-8482/-/A-54600748

42. Like Defendants' Product, the Good & Gather product prominently displays on this front label that it contains a blend of brown rice, quinoa, and red rice, with flaxseed. ***Unlike*** Defendants' Product, which contains less than 2% quinoa, the Good & Gather product lists white quinoa and black quinoa as main ingredients in the product, not in the less-than-2% grouping. Despite this difference in the products' *actual* quinoa content, the Good & Gather product sells for a lower price than Defendant's mislabeled Product.

43. Defendants' labeling of another Seeds of Change product provides a further contrast. Defendants market a product identified as "Certified Organic Spanish Style Rice With Quinoa, Peppers & Corn." The ingredient statement for that product identifies whole grain black quinoa among ingredients comprising less than 2% of the product.

44. Significantly, Defendants describe that product as Spanish Style Rice "With Quinoa," rather than identifying quinoa as one of the principal grains in the product's name. This labeling presents quinoa as an additional ingredient rather than a principal component of the rice blend.

45. Defendants' labeling of their other grain products reinforces the misleading impression created by the challenged Product's name by demonstrating that Defendants distinguish between ingredients presented as principal components of a grain blend and ingredients identified through the phrase "with."

**F. Defendants' Knowledge of Falsity and Harm Caused**

46. Defendants formulate, manufacture, label, advertise, market, and sell the Product and possess or control information concerning its ingredients, formulation, and relative ingredient quantities. Defendants therefore know, or reasonably should know, that the Product contains only a negligible amount, less than 2%, of quinoa.

47. Despite their knowledge of the Product's actual composition, Defendants prominently identify quinoa as one of the three main grain ingredients on the front of the packaging.

48. By affirmatively identifying quinoa as one of the principal ingredients, Defendants create a misleading impression concerning its significance within the Product. The omission of the material fact on the front label that quinoa comprises less than 2% of the Product renders the front label representation misleading.

49. Defendants know or reasonably should know that reasonable consumers understand the Product's name and label to communicate that quinoa is present in a substantial or meaningful amount. Defendants nevertheless continue to market and sell the Product using the challenged labeling.

50. Defendants' false and misleading labeling and packaging enable them to charge a higher price for their Product, despite it not containing a substantial or meaningful amount of quinoa. The quantity of quinoa in the Product is material to reasonable consumers' purchasing decisions. If Plaintiffs and Class members had

known that only a negligible amount of quinoa was present in the Product, they would have paid less for the Product or would not have bought it at all. Thus, Plaintiffs and Class members have suffered a financial injury by paying a price premium that the Product commands in the market as a result of Defendants' false representations that the Product is primarily made of and/or contains a meaningful amount of quinoa.

**G. Equitable Relief**

51. As a result of Defendants' unlawful business practices, and the harm caused to Plaintiffs and Class members, Defendants should be required to pay for all damages and/or restitution. Monetary compensation alone, however, is insufficient to remedy the ongoing harm caused to Plaintiffs and Class members who are unaware of Defendants' deceptive conduct and will continue purchasing the Product, reasonably but incorrectly believing that they are purchasing a product containing a substantial or meaningful amount of quinoa. Accordingly, injunctive relief requiring Defendants to cease their false and deceptive labeling practices regarding the Product is necessary and appropriate.

52. At this early stage, Plaintiffs do not know whether the Court will accept a model for legal damages or other remedies that they will proffer at the appropriate time in the future, nor do Plaintiffs know whether the Court will find that any such model or other remedy adequately compensates Plaintiffs' and the Class's losses or other harms. Plaintiffs therefore set forth alternate theories of legal damages and

equitable restitution.

53. As described in this Complaint, Defendants' material misrepresentations on the packaging of their Product are ongoing and represent an ongoing deception to Plaintiffs and consumers who are subjected to Defendants' misleading and false representations. Thus, on behalf of themselves, the Class, and the general public, Plaintiffs seek an injunction prohibiting Defendants from the marketing and packaging of the Product with the misleading and false representations described in this Complaint.

**I. Plaintiffs' Experiences**

**<u>Plaintiff Alex Merrick</u>**

54. Ms. Merrick purchased the Product on several occasions from Target and local grocery stores in San Diego County, California, during the relevant statute of limitations period.

55. Before making her purchases, Ms. Merrick saw, reviewed, and relied on the front label of the product, which prominently featured the word "quinoa" as the first word of the product name. Based on the product name, she believed that quinoa was one of the main ingredients.

56. This representation was false as, according to the ingredient list, the Product contains only a negligible amount of quinoa – *less than 2%*. Ms. Merrick did not receive the promised benefits or receive the full value of her purchase. Ms.

Merrick would not have purchased the Product, or would have paid less for it, had she known it did not, in fact, contain the claimed characteristics as alleged herein.

57. If the Product was reformulated and/or labeled without the misleading claims, Ms. Merrick would likely purchase the Product again in the future.

**Plaintiff Mildred Sevy**

58. Ms. Sevy purchased the Product in Santee, California, on multiple occasions, including in or about December 2024, December 2025, and January 2026.

59. When she purchased the Products, Ms. Sevy read and relied on the statements on the front of the packaging, including the word "quinoa" prominently displayed first in the Product's name, and believed that quinoa was a main ingredient of the Product.

60. Ms. Sevy would not have purchased the Product, or would have paid less for it, had she known that quinoa was not a substantial or main ingredient in the Product.

61. If the Product was reformulated and/or labeled without the misleading claims, Ms. Sevy would likely purchase the Product again in the future.

## CLASS ACTION ALLEGATIONS

62. As detailed above, Defendants used deceptive marketing, advertising, and product labeling techniques and practices. Defendants' customers are uniformly impacted by and exposed to that misleading and deceptive conduct.

63. Plaintiffs bring this class action under Federal Rule of Civil Procedure 23 on behalf of themselves and the following putative classes (the "Classes"):

**Multi-State Class:** All persons in the state of California or any state with similar laws[11] who purchased the Seeds of Change Quinoa, Brown & Red Rice with Flaxseed Product during the maximum period of time permitted by law.

**California Sub-Class**: All individual residents of the State of California who purchased the Seeds of Change Quinoa, Brown & Red Rice with Flaxseed product during the maximum period of time permitted by law.

64. Excluded from the Class and Sub-Class are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from

---

[11] While discovery may alter the following, Plaintiffs assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq.*), Arkansas (Ark. Code §§ 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq.*), District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq.* and §§ 350, *et seq.*), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*), Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018);*Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D.Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

65. Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

66. **Numerosity and Ascertainability:** Plaintiffs do not know the exact number of putative Class members. Due to Plaintiffs' initial investigation, however, Plaintiffs are informed and believe that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and California. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

67. **Typicality and Adequacy:** Plaintiffs' claims are typical of those of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs' claims and Class members' claims are based on the same legal theories and arise from the same uniform unlawful conduct, resulting in the same injury to Plaintiffs and to all of the other Class members. Plaintiffs do not have any interests that are antagonistic to those of the proposed Class. Plaintiffs have retained counsel competent and experienced in the prosecution of this type of litigation.

68. **Commonality:** There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

a. Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the manufacturing, packaging, marketing, distribution, and sale of the Product;

b. Whether Defendants' labeling, marketing, advertising, and packaging of the Product are misleading and/or likely to deceive reasonable consumers;

c. Whether Defendants' conduct constitutes the violations of laws alleged herein;

d. Whether Defendants knew or should have known that the representations were false or misleading;

e. Whether Defendants knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Products;

f. Whether Defendants' representations, concealments and non-disclosures concerning the Products are likely to deceive the consumer;

g. Whether Plaintiffs and the Class are entitled to restitution and damages and, if so, the appropriate measure(s);

h. Whether Plaintiffs and the Class are entitled to injunctive relief;

i. Whether Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit; and

j. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendants violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*

69. Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs on behalf of the proposed Class. Similar or identical statutory violations, business practices, and injuries are involved. The injuries sustained by proposed Class members flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive labeling, packaging, and advertising of the Product. Each instance of harm suffered by Plaintiffs and Class members has resulted directly from a single course of unlawful conduct. Individual questions, if any, pale in comparison to the numerous common questions presented in this action.

70. Defendants have acted, or failed to act, on grounds generally applicable to Plaintiffs and the Class, supporting the imposition of uniform relief to ensure compatible standards of conduct toward Class members.

71. **Predominance and Superiority:** Common questions, some of which

are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits make it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. When Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

c. This action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. Without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continue to reap and retain the substantial proceeds of its wrongful conduct.

72. **Manageability:** The trial and litigation of Plaintiffs' and the proposed Class claims are manageable. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## COUNT I
### Violation of State Consumer Protection Statutes
### (By Plaintiffs, Individually, and on Behalf of the Multi-State Class)

73. Plaintiffs, individually, and on behalf of the Multi-State Class, re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

74. Plaintiffs and the Multi-State Class Members were injured as a result of Defendants' violations of the state consumer protection statutes. These state consumer protection statutes provide a basis for redress to Plaintiffs and the Multi-State Class based on Defendants' fraudulent, deceptive, unfair, and unconscionable acts, practices, and conduct. Plaintiffs bring this claim under the following statutes:

(a) Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471, et seq.;

(b) Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, et seq.;

(c) California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.;

(d) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, et seq.;

(e) Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511, et seq.;

(f) District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, et seq.;

(g) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq.;

(h) Hawaii Unfair or Deceptive Acts or Practices Law, Haw. Rev. Stat. §§ 480-1, et seq.;

(i) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.;

(j) Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1, et seq.;

(k) Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, et seq.;

(l) Minnesota consumer protection statutes, including Minn. Stat. §§ 325F.67, et seq.;

(m) Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, et seq.;

(n) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.;

(o) New York General Business Law §§ 349 and 350, et seq.;

(p) Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1,

et seq.;

(q) Vermont Consumer Protection Act, Vt. Stat. Ann. tit. 9, §§ 2451, et seq.;

(r) Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, et seq.; and

(s) Wisconsin deceptive advertising statute, Wis. Stat. § 100.18.

75. Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive laws of each of the jurisdictions encompassing the Multi-State Class.

76. Defendants' marketing of the Product violates these prohibitions by deceiving consumers into believing the Product is primarily made of and/or contains a substantial or meaningful amount of quinoa and has the corresponding nutritional value and health benefits when it does not.

77. Defendants engaged in fraudulent and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

78. Defendants chose to package, label and market the Product in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable consumers who purchase the Product would be impacted by, and would reasonably believe, its false and misleading representations.

79. Defendants intended for Plaintiffs and Multi-State Class members to reasonably rely upon the material misrepresentations concerning the true nature of

the Product.

80. Defendants' misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiffs and Multi-State Class members to be deceived about the true nature of the Product.

81. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs and Multi-State Class members suffered ascertainable losses.

82. Had Plaintiffs and Multi-State Class members been aware of the true nature of the Product, they either would have paid less for the Product or would not have purchased the Product at all.

83. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Multi-State Class members are entitled to recover compensatory, restitution, punitive and special damages, including, but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted by relevant law.

## COUNT II

### CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
### Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.
### *(On Behalf of Plaintiffs and the California Sub-Class)*

84. Plaintiffs, individually, and on behalf of the California Sub-Class, re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

85. California's Unfair Competition Law ("UCL"), Business & Professions

Code §§ 17200, *et seq*., prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business act or practice, including unfair, deceptive, untrue, or misleading advertising.

86. A business act or practice is "unlawful" if it violates any established state or federal law. Defendants' false and misleading advertising and labeling of the Product was and continues to be "unlawful" because it violates, *inter alia*, the CLRA and FAL. As a result of their unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiffs and Class members

87. A practice is unfair if it (1) offends public policy; (2) is immoral, is unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. *See* Cal. Bus. & Prof. Code §17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

88. Defendants' conduct was and continues to be of no benefit to purchasers of the Product, as it is misleading, unfair, unlawful, and injurious to consumers who rely on the labeling and packaging of the Product. Deceiving consumers into believing the Product is primarily made of and/or contains a substantial or meaningful amount of quinoa and has the corresponding nutritional value and health benefits when it does not, is of no benefit – and is substantially

injurious – to consumers. As a result of their unfair business acts and practices, Defendants have unfairly obtained and continue to unfairly obtain money from Plaintiffs and Class members.

89. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consumer public. Defendants' conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product contains a substantial or meaningful amount of quinoa as the name and label on the front of the package suggests. As a result of their fraudulent business acts and practices, Defendants have obtained and fraudulently continue to obtain money from Plaintiffs and Class members.

90. Defendants' misrepresentations are material to a reasonable consumer. The ingredient quinoa is prominently displayed on the Product's front label as the first ingredient because Defendants understand consumers value the nutritional benefits of quinoa. Accordingly, consumers are willing to pay a premium for foods containing quinoa.

91. Plaintiffs and Class Members who purchased Defendants' Product suffered an injury by virtue of buying Products in which Defendants misrepresented the Products' true quality. Had Plaintiffs and Class Members known that Defendants misrepresented material information regarding the Product's ingredient content, they would not have purchased the Product, or would have paid less for it.

92. Defendants' conduct, as alleged herein, violates the laws and public

policies of California and the United States, as set out in this Consolidated Class Action Complaint.

93. There is no benefit to consumers or competition by allowing Defendants to deceptively label, market, and advertise their Product.

94. The harm suffered by Plaintiffs and Class Members who purchased Defendants' Products outweighs any legitimate justification, motive, or reason for packaging, marketing, advertising, and labeling the Product in a deceptive and misleading manner. These are practices and uniform courses of conduct that offend an established public policy or that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

95. The acts of Defendants in disseminating misleading and deceptive statements to consumers throughout the state of California, including to Plaintiffs and Class Members, were and are likely to deceive reasonable consumers by obfuscating the true nature of Defendants' Products and, thus, violate California Business and Professions Code §§ 17500, *et seq*.

96. Plaintiffs have standing to pursue this claim as they have suffered an injury in fact and lost money or property as a result of Defendants' actions as described herein. In particular, Plaintiffs purchased and paid a price premium for the Product and, in doing so, relied on Defendants' false and misleading representations of material facts as described herein. Had Defendants disclosed to Plaintiffs and the Class that the Product did not contain the significant amount of

quinoa that the name suggests, Plaintiffs would not have purchased the Product or would have paid less for it. Plaintiffs and the other Class Members suffered a substantial injury by virtue of buying the Products they would not have purchased, or would have paid less for, absent Defendants' unlawful, fraudulent and unfair marketing, advertising, packaging and omission about the defective nature of the Products.

97. California Business & Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive, and fraudulent business acts and practices and may order restitution by Defendants to Plaintiffs for the practices alleged in this Complaint. Plaintiffs and putative Class members are entitled under California Business & Professions Code §§ 17203 and 17208 to restitution and restoration of all ill-gotten money and property belonging to Plaintiffs and the Class.

98. Accordingly, Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendants as result of Defendants' conduct. Pursuant to California Business and Professional Code § 17203, Plaintiffs and the California Subclass members seek an order of this Court that includes, but is not limited to, an order requiring Defendants to (a) provide restitution to Plaintiffs and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiffs and the California Subclass

members' attorneys' fees and costs.

99. As a result of Defendants' above unlawful, unfair, and fraudulent acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendants from continuing these wrongful practices. Plaintiffs intend to purchase the Products or similar products if the requested injunctive relief is granted.

## COUNT III

**CALIFORNIA FALSE ADVERTISING LAW ("FAL")**
**Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(*On Behalf of Plaintiffs and the California Sub-Class*)**

100. Plaintiffs, individually and on behalf of the California Class, re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

101. The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

102. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

103. In their naming, labeling, marketing, advertising, packaging, and

selling of the Product, Defendants made, and continue to make, false and misleading statements in order to induce consumers to purchase the Product on a false premise, in violation of California Business & Professions Code §§ 17500, *et seq*.

104. Defendants' labeling, marketing, and advertising, including prominently displaying "quinoa" first in the Product's name on the front of the package, represents, expressly or by implication, that the Product contains quinoa as one of the main ingredients when, in fact, it contains only a negligible amount. In essence, Defendants used a premium, expensive ingredient as a marketing hook while filling the bag with cheaper grains.

105. Defendants are engaging and have engaged in the deceptive conduct alleged above to induce the public to purchase the Product. In their naming, labeling, marketing, advertising, packaging, and selling of the Product, Defendants knew, or should have known through the exercise of reasonable care, that their statements and representations on the front of the package regarding the quinoa content and nutritional value of the Product were and are false and/or misleading.

106. Plaintiffs have standing to pursue claims under the FAL, as both Ms. Merrick and Ms. Sevy reviewed and relied on Defendants' packaging, advertising, representations, and marketing materials regarding the Product when selecting and purchasing the Product.

107. In reliance on the statements made in Defendants' advertising and marketing materials regarding the content of quinoa as one of the main ingredients,

Plaintiffs and Class Members purchased the Product.

108. Defendants knew that their representations were false and misleading at the time they made them. Defendants deliberately provided false representations of the Product to induce consumers to purchase the Product.

109. Defendants' false and misleading advertising statements deceived the general public. As a direct and proximate result of Defendants' misleading and false advertising, Plaintiffs and Class Members have suffered injury-in-fact and have lost money and property.

110. Plaintiffs and Class Members reasonably relied to their detriment on Defendants' material misrepresentations regarding its Product.

111. As a result of Defendants' above unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendants from continuing these wrongful practices.

112. Additionally, Plaintiffs seek monetary damages and/or restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

## COUNT IV

### CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")
### Violations of Cal. Civ. Code § 1770 *et seq.*
### (*On Behalf of Plaintiffs and the California Sub-Class*)

113. Plaintiffs, individually and on behalf of the California Sub-Class, re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

114. Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d). By purchasing Defendants' Products, Plaintiffs and members of the California Class engaged in "transactions" within the meaning of California Civil Code §§ 1761(e) and 1770.

115. Defendants are "persons" within the meaning of California Civil Code § 1761(c).

116. The Products are "goods" within the meaning of California Civil Code § 1761(a).

117. California Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

118. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal.

Civ. Code § 1770.

119. Defendants engaged in unfair or deceptive acts or practices when, in the course of their business, they, among other acts and practices, intentionally and knowingly made material misrepresentations regarding the quinoa content of the Product, as detailed herein.

120. Specifically, by representing that the Product contained quinoa as one of the main ingredients when it contained a negligible amount, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in California Civil Code § 1770(a):

a. Representing that the Products have characteristics, uses, benefits and qualities which they do not have. (§1770(a)(5));

b. Representing that the Products are of a particular standard, quality and grade when they are not. (§1770(a)(7));

c. Advertising the Products with the intent not to sell them as advertised. (§1770(a)(9)); and

d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. (§1770(a)(16)).

121. Defendants' unfair or deceptive acts or practices had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class

Members, about the true quality and true value of the Products.

122. Defendants' wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

123. Plaintiffs and the Class suffered injury in fact and actual damages resulting from Defendants' material misrepresentations.

124. Plaintiffs and the Class suffered economic injury as a direct and proximate result of Defendants' violations because: (a) they would not have purchased the Products on the same terms if they had known that the Products were falsely labeled as alleged herein; (b) they paid a price premium compared to products without the misrepresentation alleged herein; and (c) the Products did not have the characteristics, ingredients, uses, benefits or qualities as promised.

125. Defendants' violations present a continuing risk to Plaintiffs and the Class, as well as to the general public, and therefore affect the public interest.

126. On August 12, 2026, Plaintiff Merrick sent a pre-suit notice letter to Defendant Mars Food pursuant to CLRA § 1782. The letter was sent by certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demanded that Defendant Mars Food correct the unlawful, unfair, false and/or deceptive practices alleged herein.

127. Accordingly, Plaintiffs seek, pursuant to California Civil Code §1780(a)(3), on behalf of themselves and those similarly situated California Sub-Class members, compensatory damages, punitive damages and restitution of any ill-

gotten gains due to Mars Food's acts and practices.

128. On November 5, 2026, Plaintiff Sevy sent a letter to Defendants Mars Food US, LLC and Mars, Inc. pursuant to CLRA § 1782. The letter was sent by certified mail, return receipt requested, and provided notice of Defendants' violation of the CLRA and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged herein. If Mars, Inc. fails to take corrective action within 30 days of receipt of the demand letter, Plaintiffs will amend their complaint to assert claims for actual, punitive, and statutory damages, as appropriate.

129. Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the California Sub-Class will continue to suffer harm. Plaintiffs and those similarly situated have no adequate remedy at law to stop Defendants' continuing practices. Plaintiffs also request that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## COUNT V

## UNJUST ENRICHMENT
**(*On Behalf of Plaintiffs and Classes*)**

130. Plaintiffs, individually and on behalf of the Classes, re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

131. At all times relevant hereto, Defendants deceptively marketed, advertised, and sold the Product to Plaintiffs and the Class.

132. Class members and Plaintiffs conferred benefits on Defendants by purchasing the Product, which they would not have done but for Defendants' deceptive advertising and marketing. Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and the Class, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiffs and the Class did not receive Products of the quality, nature, fitness or value that was represented by Defendants and reasonable consumers would expect.

133. Defendants were unjustly enriched in retaining the revenues derived from Product purchases by Plaintiffs and the Class, which retention under these circumstances is unjust and inequitable because Defendants falsely represented that quinoa was a main ingredient in the Product when, in fact, the Product contained only a negligible amount of quinoa, which caused injuries to Plaintiffs and the Class because they paid a price premium due to the misleading advertising and labeling on the Product.

134. Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and the Class under these circumstances is unjust and inequitable.

135. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not

succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show class-wide reliance and materiality beyond the element required under unjust enrichment. In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because an action under unjust enrichment imposes no such mens rea requirement, and liability exists even if Defendants acted in good faith. Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price will ensure that Plaintiffs and the Class are in the same position they would have been in had Defendants' wrongful conduct not occurred, *i.e.*, the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at their disposal.

136. Plaintiffs, therefore, seek the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT VI**

**COMMON LAW FRAUD, DECEIT AND/OR MISREPRESENTATION**
**(*On Behalf of Plaintiffs and the Classes*)**

137. Plaintiffs, individually and on behalf of the Classes, re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

138. Plaintiffs bring this claim under the laws of the State of California.

139. As alleged more fully herein, Defendants made false and misleading representations to Plaintiffs and Class members when they marketed the Product, representing quinoa as one of the main grain ingredients in the Product.

140. When Defendants made these representations and omissions, they knew or reasonably should have known that the labels were false and misleading. Defendants had no reasonable grounds for believing that these representations were true when made.

141. Defendants intended that Plaintiffs and Class Members rely on these representations. Plaintiffs and Class Members reasonably relied on the representation that quinoa was one of the main ingredients in the Product when purchasing the Product.

142. Defendants' grain ingredient representations were a substantial factor and proximate cause of the damages and losses to Plaintiffs and Class Members.

143. In addition, class-wide reliance can be inferred because Defendants' representation regarding the quinoa content was material, *i.e.*, a reasonable consumer would consider it important in deciding whether to buy the Product.

144. Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' misrepresentations and omissions because Plaintiffs and Class Members would not have purchased the Product, or would have paid significantly less for it, had they known the Product did not contain quinoa as one of the primary ingredients.

145. Defendants' conduct as described herein was designed to maximize Defendants' profits even though they knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of other members of the proposed Classes, respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendants, and issue an order as follows:

A. Certifying the Classes under Federal Rule of Civil Procedure 23, designating Plaintiffs as Class Representatives, and appointing the Plaintiffs' counsel as Class Counsel;

B. Awarding to Plaintiffs and the Classes damages, restitution, and injunctive relief as pleaded or as the Court may deem proper;

C. Ordering Defendants to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the Classes;

D. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

E. Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: November 20, 2026

Respectfully Submitted,

**The Wright Law Office, P.A.**

s/ Nisha Wright
(SBN: 202564)
600 West Broadway
Suite 700
San Diego, CA 92101
nisha@wrightlawoffice.com
Telephone: (619) 393-3677

**Manfred, APC**
Manfred Muecke (SBN: 222893)
4225 Executive Square
Suite 600-6051
La Jolla, CA 92101-3370
mmuecke@manfredapc.com
Phone: 619-550-4005
Fax: 619-550-4006

*Attorneys for Plaintiff Alex Merrick*

**Keller Grover LLP**

*s/* Eric Grover

Eric A. Grover (SBN: 136080)
eric.grover@kellergrover.com
Rachael G. Jung (SBN: 239323)
rachael.jung@kellergrover.com
1965 Market Street
San Francisco, CA 94103
Telephone: (415) 543-1305

**Law Offices of Scot D. Bernstein**
**A Professional Corporation**
Scot Bernstein (SBN: 94915)
swampadero@sbernsteinlaw.com
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Telephone: (916) 447-0100

*Attorneys for Plaintiff Mildred Sevy*